**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ERIC STAFFORD,** | |
| *Plaintiff,* | **CIVIL ACTION NO. 17-4010** |
| **v.** | |
| **MICHAEL WENEROWICZ,** *et al.***,** | |
| *Defendants.* | |

**MEMORANDUM OPINION**

**Rufe, J.**                                                                                 **December 18, 2018**

Plaintiff Eric Stafford, by and through his counsel, filed suit against State Correctional

Institution at Graterford ("SCI-Graterford") employees[1] (collectively, "DOC Defendants"),

Correct Care Solutions ("CCS") and its physician, Michael DellaVecchia[2], and Wexford Health

Sources, Inc. and two of its physicians (the "Wexford Defendants")[3], alleging that he was

deprived of appropriate medical treatment for his eye condition during his incarceration, which

led to permanent injury to his vision.  The DOC Defendants and CCS have filed motions to

dismiss.  The DOC Defendants' motion will be granted in part and denied in part, and the motion

of CCS will be granted.

**I.     BACKGROUND[4]**

Plaintiff Eric Stafford was incarcerated at SCI-Graterford between 2001 and 2016.

Plaintiff alleges that while he was imprisoned in or about 2001, he was misdiagnosed as

---

[1] The employees include Michael Wenerowicz, Cynthia Link, Gerald Galinski, Joseph Korszniak, Bob Grossman, Barbara March, Barbara Herbst, Officer Witmer, David Mascellino, and Christopher Oppman.

[2] Plaintiff voluntarily dismissed the claims against DellaVecchia.

[3] As noted in a previous order, the Wexford Defendants have not yet been served.

[4] The following facts, alleged in Plaintiff's Amended Complaint, are construed in the light most favorable to Plaintiff as the non-moving party.

suffering from "sarcoidosis," when in fact he was suffering from undiagnosed "uveitis." From

2013 until his release in 2016, Plaintiff alleges that he requested sick calls multiple times per

week due to continuing eye- and vision-related problems, but was only granted infrequent passes

to the infirmary, and was denied treatment. Plaintiff then began filing internal grievances

concerning his care, and he was eventually treated at Wills Eye Hospital, where he received

doctor prescriptions and orders to attend medical visits and follow-up medical visits. He was

later denied permission to attend those visits, and was denied timely access to his prescriptions

without just cause. As a result, the delays he faced in obtaining appropriate medical treatment

for a serious condition have left Plaintiff in a permanent state of limited and blurred vision.

## II.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), dismissal of a complaint for failure

to state a claim upon which relief can be granted is appropriate where a plaintiff's "plain

statement" lacks enough substance to demonstrate that he is entitled to relief.[5] In determining

whether a motion to dismiss should be granted, the court must consider only those facts alleged

in the complaint, accepting the allegations as true and drawing all logical inferences in favor of

the non-moving party.[6] Courts are not, however, bound to accept as true legal conclusions

framed as factual allegations.[7] Something more than a mere *possibility* of a claim must be

alleged; a plaintiff must allege "enough facts to state a claim to relief that is plausible on its

face."[8] The complaint must set forth "direct or inferential allegations respecting all the material

---

[5] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

[6] *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994); *Fay v. Muhlenberg Coll.*, No. 07-4516, 2008 WL 205227, at *2 (E.D. Pa. Jan. 24, 2008).

[7] *Twombly*, 550 U.S. at 555, 564.

[8] *Id.* at 570.

elements necessary to sustain recovery under *some* viable legal theory."[9]  Deciding a motion to

dismiss, courts may consider "only allegations in the complaint, exhibits attached to the

complaint, matters of public record, and documents that form the basis of a claim."[10]

## III.    DISCUSSION

Plaintiff asserts claims in Count I for violations of the Eighth Amendment under

§ 1983,[11] and claims in Count II for deprivation of his right not to undergo cruel and unusual

punishment under the Pennsylvania Constitution.  In response to the motions to dismiss, Plaintiff

has withdrawn his claims against Defendants in Count II for violations of the Pennsylvania

Constitution.[12]

To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by

the Constitution and laws of the United States, and must show that the alleged deprivation was

committed by a person acting under color of state law."[13]  Plaintiff must allege that the person

acting under the color of law either "intentionally" violated his constitutional rights or acted

"deliberately indifferent" in violation of those rights.[14]

---

[9] *Id.* at 562 (internal quotation marks and citations omitted).

[10] *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *Brown v. Daniels,* 128 F. App'x 910, 913 (3d Cir. 2005) (quoting *Lum v. Bank of Am.,* 361 F.3d 217, 222 n.3 (3d Cir. 2004)).

[11] Plaintiff's heading in Count I notes that he is bringing a § 1983 claim for violations of the Eighth *and* Fourteenth Amendments against all Defendants.  As Plaintiff notes in his brief, he only references the Fourteenth Amendment because it "incorporates" the Eighth Amendment right to be free from cruel and unusual punishment, so that it can be enforceable against state and local governments. *Estelle v. Gamble*, 429 U.S. 97, 101–02 (1976) (citation omitted) (noting that the Eight Amendment's right to be free from cruel and unusual punishment applies to states via the Fourteenth Amendment).  The Court will therefore address Plaintiff's claims in Count I pursuant to the Eighth Amendment. *See Gannaway v. Berks Cty. Prison*, 439 F. App'x 86, 89 n.2 (3d Cir. 2011) (citing *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003)) (noting that cases involving allegations of inadequate medical care are typically reviewed under the Eighth Amendment standard).

[12] Pl.'s Resp. to Department of Corrections Defs.' Mot. to Dismiss [Doc. 22] at 2 n.1.

[13] *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted); *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995).

[14] *See, e.g.*, *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 843–44 (1998).

## A. DOC Defendants' Motion to Dismiss

Plaintiff alleges that the DOC Defendants were deliberately indifferent to his serious medical need, in violation of the Eighth Amendment. A prisoner's Eighth Amendment right to be free from cruel and unusual punishment "imposes duties on [prison] officials, who must . . . ensure that [the] inmate[] receive[s] adequate . . . medical care, and must 'take reasonable measures to guarantee the safety of the inmate[].'"[15] To state a claim for denial of medical care under the Eighth Amendment, a current or former prisoner must plausibly allege that a prison official has demonstrated "[1] deliberate indifference to [2] serious medical needs."[16] This entails both an "objective" claim that the prisoner's medical needs were sufficiently serious, and a "subjective" illustration that a prison official acted with a sufficiently culpable state of mind through deliberate indifference.[17] A prison official who is aware of a prisoner's need for medical treatment and intentionally refuses to provide it, or prevents a prisoner from receiving needed or recommended medical treatment, acts with deliberate indifference.[18]

### 1. Official Capacity Claims Against DOC Defendants

To the extent that Plaintiff alleges claims against DOC Defendants in their official capacities, the Court finds those allegations are barred by the Eleventh Amendment.[19] The

---

[15] *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citations omitted). "The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners against the 'unnecessary and wanton infliction of pain.'" *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).

[16] *Estelle*, 429 U.S. at 104; *Natale*, 318 F.3d at 582.

[17] *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Mitchell v. Gershen*, 466 F. App'x 84, 86 (3d Cir. 2011); *see also Brown v. Thomas*, 172 F. App'x 446, 450 (3d Cir. 2006) (addressing that a prison official acts with deliberate indifference to a serious medical need "when he knows of and disregards an excessive risk to inmate health or safety") (citing *Farmer*, 511 U.S. at 837)).

[18] *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

[19] *See Foye v. Wexford Health Sources Inc.*, 675 F. App'x 210, 213–14 (3d Cir. 2017) (citing numerous Third Circuit cases that have held the Eleventh Amendment bars suit against state corrections employees in their *official*, rather than *individual*, capacities). Specifically, Plaintiff sues Michael Wenerowicz, Cynthia Link, Gerald Galinski, Joseph Korszniak, Bob Grossman, Barbara March, Barbara Herbst, and Officer Witmer, in both their individual *and* official capacities, for monetary relief. Am. Compl. ¶¶ 4-11.

Supreme Court has held that a state official who is sued in his or her official capacity is not a "person" within the meaning of § 1983, as an abrogation of the states' Eleventh Amendment immunity, thereby precluding actions for damages.[20] The Third Circuit has explicitly held that "[b]ecause SCI-Graterford . . . [is] part of the executive department of the Commonwealth of Pennsylvania, [its] employees share in the Commonwealth's Eleventh Amendment immunity to the extent that they were sued in their official capacities."[21] Thus, Plaintiff's allegations that seek damages against DOC Defendants in their official capacities for monetary relief are dismissed with prejudice.

## 2. Individual Capacity Claims Against DOC Defendants[22]

Although they do not dispute that Plaintiff has a serious medical need, the DOC Defendants seek the dismissal of the § 1983 claims in Count I against them in their individual capacities for deliberate indifference because the Amended Complaint does not allege facts related to their personal involvement in the alleged wrongful conduct. The Court disagrees.

### i. Nurses as DOC Defendants[23]

To plead liability against a state official, a plaintiff must generally allege that the official was personally involved in the constitutional violation at issue.[24] A prison medical employee may be held to have acted with deliberate indifference where he or she "prevent[ed] an inmate

---

[20] *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65, 71 (1989) ("[I]t is not a suit against the [state] official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself.").

[21] *Dickerson v. SCI Graterford*, 453 F. App'x 134, 137 (3d Cir. 2011) (citing *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 254 (3d Cir. 2010)).

[22] State officials sued in their individual capacities for damages are considered "persons" under § 1983. *Hafer v. Melo*, 502 U.S. 21, 30–31 (1991).

[23] The nurses who allegedly work at SCI-Graterford in the Amended Complaint are Defendants Bob Grossman, Barbara March, and Barbara Herbst. Am. Compl. ¶¶ 8-10.

[24] *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

from receiving recommended treatment for serious medical needs."[25]  Deliberate indifference

also may be shown when that employee "den[ies] reasonable requests for medical treatment . . .

and such denial expose[s] [plaintiff] to undue suffering or the threat of tangible residual

injury."[26]

Plaintiff adequately alleges that the prison nurses exhibited deliberately indifferent

conduct toward him while he was incarcerated.  Upon information and belief,[27] the nurses were

"responsible for providing medical care to inmates, reviewing medical records, and supervising

medical personnel."[28]  According to the Amended Complaint, Plaintiff alleges that the nurses

failed to provide Plaintiff with treatment, despite his sick call requests.[29]  Even after Plaintiff was

ultimately provided medical care at Wills Eye Hospital, where he received doctor prescriptions

and orders to attend medical visits and follow-up medical visits, the nurses allegedly cancelled

these visits and would deny him timely prescriptions without just cause.[30]  Construing these

allegations in favor of Plaintiff as the non-moving party, Plaintiff has stated a claim for

deliberate indifference against the nurses, regarding his serious medical needs.

---

[25] *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346–47 (3d Cir. 1987) (internal quotation marks and citation omitted).

[26] *Id.* (internal quotation marks and citation omitted).

[27] The Third Circuit has long established that well-pleaded allegations that survive a Rule 12(b)(6) motion also include "facts alleged on *information and belief*." *Melo-Sonics Corp. v. Cropp*, 342 F.2d 856, 859 (3d Cir. 1965) (emphasis added); *see also McDermott v. Clondalkin Grp., Inc.*, 649 F. App'x 263, 267–68 (3d Cir. 2016) ("[P]leading upon information and belief is permissible '[w]here it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control' . . . .") (citations omitted).

[28] Am. Compl. ¶¶ 8-10.

[29] *Id.* ¶ 25.

[30] *Id.* ¶¶ 27-32.  Although these paragraphs do not specifically refer to specific defendants, they can reasonably be read as directed to all of the DOC Defendants.

## ii. Non-Medical DOC Defendants[31]

Plaintiff must similarly allege that the non-medical DOC Defendants had personal

involvement in deliberately indifferent conduct, but through their supervisory roles.  It is well

established in civil rights actions that liability may not be predicated on the operation of

*respondeat superior.*[32]  If a plaintiff asserts deliberate indifference by a state official with a

supervisory role, a plaintiff must either allege (1) the state official "established and maintained a

policy, practice or custom which directly caused the constitutional harm," or (2) the state official

"participated in violating [the] plaintiff's rights, directed others to violate them, or, as the persons

in charge, had knowledge of and acquiesced in their subordinates' violations."[33]

Plaintiff's Amended Complaint sufficiently states a claim for deliberately indifferent

conduct against all non-medical DOC Defendants.  As Plaintiff's sarcoidosis condition

progressed, the non-medical DOC Defendants also were involved in denying his requests for

treatment despite turning in sick calls, and failing to permit Plaintiff further treatment and

medication after his visit to Wills Eye Hospital.[34]  These delays in implementing his post-

visitation treatment plans, along with the prolonged delays in providing his medication, caused

Plaintiff to suffer permanent limited and blurred vision.[35]  Their participation, either through

---

[31] The non-medical DOC Defendants who allegedly work at SCI-Graterford in the Amended Complaint are Michael Wenerowicz, Cynthia Link, Gerald Galinski, Joseph Korszniak, Officer Witmer, David Mascellino, and Christopher Oppman.  Am. Compl. ¶¶ 4-7, 12-13.

[32] *Rode*, 845 F.2d at 1207 (citing *Parratt v. Taylor*, 451 U.S. 527, 537 n.3 (1981)); *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077, 1082 (3d Cir. 1976)).

[33] *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010) (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alterations omitted)).  Simply alleging that supervisors had constructive knowledge based on their occupational role will not suffice.  *Parrish v. Corizon Health, Inc.*, No. 15-1813, 2016 WL 4123937, at *4 (E.D. Pa. Aug. 3, 2016) (citing *Hasty v. Cty. of Montgomery*, No. 12-4335, 2014 WL 830282, at *7 (E.D. Pa. Mar. 4, 2014)).

[34] Am. Compl. ¶¶ 24-25, 27-32.

[35] *Id.* ¶¶ 35-37.

direct action or through directing others to violate Plaintiff's rights, satisfies the pleading standard.[36]

Further, each of the non-medical DOC Defendants also allegedly helped establish and maintain a policy, practice or custom, which directly caused Plaintiff's Eighth Amendment violation. According to the Amended Complaint, their roles include "overseeing all staff at SCI Graterford as well as all policies, practices and customs," including medical care, and "overseeing lower ranking correctional officers . . . and enforcing and maintaining [those] policies, practices, and customs."[37] As a direct and proximate result of their policies, practices and customs, which Plaintiff alleges were "adopted with deliberate indifference," Plaintiff was denied the necessary treatment for his serious medical needs.[38] By alleging the nature of their roles, and considering that Plaintiff's claims include time periods in which he was not being treated by any medical personnel,[39] Plaintiff has sufficiently stated a claim against the non-medical DOC Defendants.

## B. Motion to Dismiss of CCS

CCS argues that Plaintiff has not sufficiently pled facts concerning any policy, custom, or practice of CCS that caused Plaintiff's injuries.[40] The Court agrees that Plaintiff has not adequately alleged a claim of deliberate indifference against CCS.

---

[36] *See Lanzaro*, 834 F.2d at 347 ("Deliberate indifference is [] evident where prison officials erect arbitrary and burdensome procedures that 'result[] in interminable delays and outright denials of medical care to suffering inmates.'") (citation omitted).

[37] Am. Compl. ¶¶ 4-7, 12-13.

[38] *Id.* ¶ 42.

[39] *See, e.g.*, *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004) ("If a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands.").

[40] CCS also argues that Plaintiff's claim is untimely, but the Court cannot determine at this time that the claims are barred.

Congress has not codified a statute of limitations applicable to suits for the vindication of civil rights, and has instead "determined that gaps in federal civil rights acts should be filled by state law, as long as that law is not

Section 1983 liability against a municipal entity cannot be based on a theory of *respondeat superior* or vicarious liability;[41] the same applies to a private company providing medical services to inmates at state facilities.[42] A private company may be liable, though, if a plaintiff alleges facts to state a claim that, with deliberate indifference to the consequences, a defendant "had a policy, custom, or practice, and that the policy, custom, or practice caused the constitutional violation at issue."[43] To satisfy the pleading standard, a plaintiff "must identify a custom or policy, and specify what exactly that custom or policy was."[44]

---

inconsistent with federal law." *Pearson v. Sec'y Dep't of Corr.*, 775 F.3d 598, 602 (3d Cir. 2015) (quoting *Hardin v. Straub*, 490 U.S. 536, 538 (1989)). For claims brought under § 1983, federal courts apply the statute of limitations for personal injury actions in the state where the cause of action arose. *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009). Because the Pennsylvania statute of limitations for a personal injury action is two years, the statute of limitations for § 1983 claims arising in Pennsylvania is two years. *Id.* (citing 42 Pa. C.S. § 5524(2)); *Savage v. Bonavitacola*, 180 F. App'x 384, 385 (3d Cir. 2006).

The Third Circuit has repeatedly held that Pennsylvania's two-year statute of limitations for personal-injury claims, when applied to § 1983 actions, should be tolled while an inmate exhausts administrative remedies. *Jackson v. Rodriguez*, 728 F. App'x 78, 79 (3d Cir. 2018). Under the continuing violations doctrine, a plaintiff can sue for actions that occurred outside the limitations period if "a defendant's conduct is part of a continuing practice" and "the last act evidencing the continuing practice falls within the limitations period." *Reyes v. Sauers*, 453 F. App'x 138, 140 (3d Cir. 2011) (citing *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001)).

Further discovery would be necessary to determine whether the exhaustion of administrative remedies and the continuing violations doctrine were properly implemented by Plaintiff to toll the statute of limitations, due to the Amended Complaint's dearth of any specific dates in which Plaintiff pursued these tolling theories. Thus, it would be improper to conclude at this stage that the statute of limitations bars Plaintiff's claims. *Jackson*, 728 F. App'x at 79; *Powell v. Wetzel*, No. 12-2455, 2016 WL 8731445, at *8 (M.D. Pa. Sept. 13, 2016).

[41] *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).

[42] *See Sims v. Wexford Health Sources*, 635 F. App'x 16, 20 (3d Cir. 2015).

[43] *Id.* (citing *Natale*, 318 F.3d at 583–84); *see also Chimenti v. Pa. Dep't of Corrs.*, No. 15-3333, 2017 WL 3394605, at *11 (E.D. Pa. Aug. 8, 2017) (finding that *Monell* liability may be extended to private corporations operating under a contract with the state, such as CCS).

[44] *McTernan v. City of York, Pa.*, 564 F.3d 636, 658 (3d Cir. 2009) (citation omitted); *see also id.* (noting that the pleading standard requires a "showing," as opposed to a "blank assertion, of entitlement to relief") (citation omitted). For purposes of meeting this standard, a "policy" exists when a municipal decision-maker with final authority issues an official proclamation or edict. *Kelly v. Borough of Carlisle*, 622 F.3d 248, 263 (3d Cir. 2010). A "custom" exists when "practices of state officials [are] so permanent and well settled as to virtually constitute law." *Id.* (internal citations omitted). To prove policy or custom, a plaintiff must demonstrate "that a [decision-maker] is responsible either for the policy or, through acquiescence, for the custom." *Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 193 (3d Cir. 2009) (internal quotation marks and citations omitted).

Here, Plaintiff fails to adequately allege a company policy, custom, or practice against CCS for providing inadequate medical care. CCS contracted with SCI-Graterford to provide health care services to its inmates.[45] Rather than specifying the policies and customs of CCS, as Plaintiff did with the non-medical DOC Defendants, the only statement that the Court can liberally construe in favor of Plaintiff is when Plaintiff alleges: "As a direct and proximate result of the Defendants' actions, omissions, policies, practices and customs, all committed or adopted with deliberate indifference, Plaintiff was denied necessary treatment for his serious medical needs . . . ."[46]

A complaint must contain more than "conclusory" statements regarding a private healthcare provider's policy, custom, or practice, to survive a motion to dismiss.[47] Given that the non-medical DOC Defendants allegedly were involved in the policies and customs governing the inadequate medical treatment of its inmates, and that Plaintiff provides no such allegations against CCS, the Court cannot determine from the Amended Complaint that CCS had separate policies and customs from those of SCI-Graterford, which also had its own nurses. Thus, without more factual support as to whether the alleged inadequacies in his medical care were the

---

[45] Am. Compl. ¶ 17.

[46] Am. Compl. ¶ 42.

[47] *Sims*, 635 F. App'x at 20 ("Even construing his complaint liberally, accepting [the plaintiff]'s statements as true would have resulted in circular reasoning. His complaint stated that [private healthcare provider] had an open practice, policy, or custom of deliberate indifference . . . . His statement of facts merely repeated this.").

result of a policy, custom, or practice of CCS,[48] Plaintiff has failed to state a claim against CCS.[49]

### C. Leave to Amend

The Third Circuit has held that in civil rights cases, the Court must allow amendment unless doing so would be inequitable or futile.[50] The Court will permit Plaintiff to file a curative amendment with respect to his deliberate indifference claims against CCS. Thus, Count I will be dismissed without prejudice against CCS.

## IV. CONCLUSION

For the foregoing reasons, the DOC Defendants' motion to dismiss is granted in part and denied in part, and the motion to dismiss of CCS is granted. Plaintiff is granted leave to file a Second Amended Complaint. An order follows.

---

[48] *See Williams v. Wexford Health Sources, Inc.*, No. 16-3629, 2016 WL 7156395, at *6 (E.D. Pa. Dec. 7, 2016) (providing various district court cases that have found allegations too conclusory to state a *Monell* claim, and holding that "[t]here is [] no indication that these alleged inadequacies in care were the result of policy or custom as compared to individual decisionmaking"); *see also Stankowski v. Farley*, 251 F. App'x 743, 748 (3d Cir. 2007) (holding that a private company providing medical care inside a prison may not be held liable for the "constitutional violations committed by its employees, unless [it] has adopted a policy, practice or custom that caused the constitutional violations alleged") (citations omitted).

[49] CCS also argues that Plaintiff's claims for punitive damages should be dismissed. A plaintiff cannot recover punitive damages under § 1983 unless a plaintiff demonstrates that the defendant acted with reckless indifference, which has been equated to a deliberate indifference to a substantial risk of serious harm. *Farmer*, 511 U.S. at 836 (holding that "acting . . . with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk"); *see also Feldman v. Phila. Hous. Auth.*, 43 F.3d 823, 833 (3d Cir. 1994) (citing *Smith v. Wade*, 461 U.S. 30, 56 (1983)) (finding that punitive damages may be assessed in a § 1983 action when the defendant acted with evil motive or intent, or with reckless or callous indifference to the plaintiff's federally protected rights). Since Plaintiff has failed to allege deliberate indifference against CCS in his Amended Complaint, Plaintiff also has failed to allege reckless indifference for punitive damages at this stage.

[50] *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007).